**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CAROLINE SCHAEFER, an individual, )<br>)<br>            Plaintiff,       )<br>   vs.                               )<br>                                      )<br>DIAMOND RESORTS INTERNATIONAL )<br>MARKETING, INC., a California corporation; )<br>DARRYL TROY PARTIN, an individual; )<br>ROE BUSINESS ENTITIES I through X, )<br>inclusive; and DOES I through X, inclusive, )<br>                                      )<br>            Defendants.    )<br>_____) | Case No.: 2:14-cv-01900-GMN-CWH<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss (ECF No. 17) filed by Defendants Diamond Resorts International Marketing, Inc. ("Diamond") and Darryl Troy Partin (collectively, "Defendants"). Plaintiff Caroline Schaefer ("Plaintiff") filed a Response (ECF No. 18), and Defendants filed a Reply (ECF No. 25).

**I.     BACKGROUND**

This case arises out of Plaintiff's employment with her former employer Defendant Diamond Resorts International Marketing, Inc. ("Diamond"). Plaintiff was hired by Diamond on May 6, 2013 as a Vacation Counselor in the Sales Department. (Am. Compl. ¶ 5, ECF No. 11). Around the same time, Defendant Troy Partin ("Troy" or "Partin") was also hired by Diamond to work in the same department. (*Id.* ¶ 6). Plaintiff alleges that she was in a relationship with Partin at the time of her employment with Diamond. (*Id.* ¶ 7). Shortly thereafter, Plaintiff and Partin terminated their relationship, and Plaintiff alleges that, "[d]espite the terminated relationship, [Partin] continued to make unwanted advances against [Plaintiff] and would often make suggestive and crude jokes, creating a hostile work environment for

[Plaintiff]." (*Id.* ¶¶ 9–10).  For example, Plaintiff alleges that on one occasion, Partin "brought to work all of [Plaintiff]'s personal items she had left at his house and left them open and unattended in the parking lot for her to pick up, even after she had objected to him doing so." (*Id.* ¶ 12).  That same day, Plaintiff alleges that she reported Partin's actions to her supervisor, Kenny Alexander. (*Id.* ¶ 14).  Plaintiff alleges that Partin continued to harass her at work, and Plaintiff "again reported the harassment to her supervisor," and "raised additional complaints on multiple occasions with Diamond's HR Generalist Carrie Lentine." (*Id.* ¶¶ 15–26).  However, Plaintiff alleges that "Diamond did nothing and failed to remedy the hostile work environment," and "retaliated against her for reporting the conduct - terminating her employment on November 19, 2013." (*Id.* ¶¶ 28–29).

On October 7, 2014, Plaintiff filed a Complaint in state court. (*See* Compl., ECF No. 1-1).  Shortly thereafter, Defendants removed the case to this Court. (*See* Pet. for Removal, ECF No. 1).  On December 11, 2014, Plaintiff filed an Amended Complaint as a matter of course. (*See* Am. Compl., ECF No. 11).  In the Amended Complaint, Plaintiff alleges the following causes of action: (1) violations of Title VII; (2) violations of NRS 613.310–613.435; (3) breach of implied covenant of good faith and fair dealing; (4) tortious discharge; (5) breach of contract; (6) intentional infliction of emotional distress; (7) defamation and slander per se; and (8) intentional interference with contractual relations. (*Id.* ¶¶ 31–74).

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the

Page 3 of 16

amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

### A. Title VII

Plaintiff's first cause of action alleges that "Diamond engaged in discriminatory practices which harmed [Plaintiff] and which violate [Title VII], including, but not limited to, the discharge of [Plaintiff] because of her sex, and the discharge of [Plaintiff] as repudiation for her reporting of the hostile work environment she had been experiencing due to harassment from other employees." (Am. Compl. ¶ 32, ECF No. 11). Although Plaintiff's allegations are unclear as to how Diamond specifically violated Title VII, the Court will analyze Plaintiff's Amended Complaint to the pleading standards for claims of sex discrimination, hostile work environment, and retaliation.

#### 1. Sex Discrimination

In order to allege a *prima facie* discrimination claim, a plaintiff must demonstrate that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to plaintiff's own were treated more favorably. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 n. 5 (9th Cir. 2003).

Regarding Plaintiff's sex discrimination claim, Plaintiff sufficiently alleges that she is a member of a protected class. Plaintiff also alleges an adverse employment action—wrongful termination. However, Plaintiff does not plead that she was performing according to her employer's legitimate expectations, nor does she provide any factual allegations from which the Court could plausibly infer that this was so. Moreover, Plaintiff fails to plead that other employees with qualifications similar to Plaintiff's own were treated more favorably. Accordingly, this claim will be dismissed with leave to amend.

/ / /

### 2. Hostile Work Environment

"Hostile environment" harassment refers to situations where employees work in offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Sav. Bank, SFV v. Vinson*, 477 U.S. 57, 65 (1986) (citation omitted). A hostile environment sexual harassment claim has three elements: (1) the plaintiff must show "he or she was subjected to sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison*, 924 F.2d at 875–76 (citation omitted). Whether an environment is "hostile" or "abusive" is a matter that "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

"An employer is liable for a hostile environment created by a plaintiff's co-worker if it knew or should have known about the misconduct and failed to take 'prompt and effective remedial action.'" *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (quoting *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 1001 (9th Cir. 2010)).

The Court finds that taking the allegations in the complaint in the light most favorable to Plaintiff and accepting them as true, the harassment directed at Plaintiff could be sufficiently severe and pervasive to state a claim of hostile work environment if more factual allegations were provided in the Complaint. For a finding of a hostile work environment, the alleged harassment must be extreme. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)

(stating that in the context of Title VII, simple teasing, off-hand comments, and isolated incidents do not amount to harassment). The Amended Complaint in this case only alleges facts regarding two specific incidents of harassment. For example, Plaintiff alleges that "Troy brought to work all of Caroline's personal items she had left at his house and left them open and unattended in the parking lot for her to pick up, even after she had objected to him doing so." (Am. Compl. ¶ 12). Moreover, Plaintiff alleges that "[o]n one occasion at work Troy shouted out that Caroline has 'a big cave,' implying that Caroline was unchaste and would sleep around." (*Id.* ¶ 62). However, the remainder of the Amended Complaint contains only general allegations of harassment. For example, Plaintiff alleges that "Troy continued to make unwanted advances against Caroline and would often make suggestive and crude jokes," and "Troy and Pamela would make rude, suggestive and inappropriate comments creating a hostile work environment." (*Id.* ¶¶ 10, 24). Because Plaintiff only alleges two factually specific incidents of harassment, the Court finds that Plaintiff's allegations do not rise to the level of pervasive harassment to support a hostile work environment claim. Accordingly, this claim will be dismissed with leave to amend so that Plaintiff can provide a more specific factual basis for her general allegation that she suffered unwanted advances and rude, suggestive, and inappropriate comments.

   **3. Retaliation**

Title VII similarly prohibits an employer from retaliating against an employee who opposes unlawful employment acts. *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a prima facie case for retaliation under Title VII, an employee must show (1) that she engaged in a protected activity, (2) she subsequently experienced an adverse employment action, and (3) a causal link exists between the two. *Id.* "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Id.*

First, Plaintiff alleges her engagement in a protected activity by "report[ing] the harassment to her supervisor, Kenny Alexander, on November 14, 2013," and "rais[ing] additional complaints on multiple occasions with Diamond's HR Generalist Carrie Lentine." (Am. Compl. ¶¶ 25–26). Second, Plaintiff alleges that she experienced an adverse employment action when Diamond terminated her employment on November 19, 2013. (*Id.* ¶ 29). Third, a causal link can be inferred between these two actions, considering their proximity in time. Plaintiff was terminated merely five days after reporting the harassment to her supervisor. Accordingly, the Court finds that Plaintiff has sufficiently pled a retaliation claim under Title VII against Diamond. Thus, Defendants' Motion to Dismiss on this claim is denied.

### B.   Violation of Nevada Revised Statutes 613.310–613.435

Plaintiff's second cause of action alleges that "Diamond engaged in discriminatory practices which harmed [Plaintiff] and which violate NRS 613.310 through 613.435, including, but not limited to, the discharge of [Plaintiff] because of her sex, and the discharge of [Plaintiff] as repudiation for her reporting of the hostile work environment she had been experiencing due to harassment from other employees." (Am. Compl. ¶ 36). Claims for unlawful discrimination under NRS 613.330 are analyzed under the same principles applied to similar Title VII claims. *See Apececche v. White Pine Co.*, 615 P.2d 975, 977–78 (Nev. 1980) (comparing NRS 613.330 to section 703(a)(1) of Title VII of the Civil Rights Act of 1964 and analyzing NRS 613.330 according to federal precedent). Accordingly, the Court analyzes Plaintiff's second claim as it analyzed her first claim. As discussed above, the Court dismisses Plaintiff's discrimination and hostile work environment claim with leave to amend. Moreover, Defendants' Motion to Dismiss as to Plaintiff's retaliation claim under state statute is denied.

### C.   Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's third cause of action alleges that Diamond breached its duty of good faith and fair dealing. (Am. Compl. ¶¶ 39–45). Under Nevada law, "[e]very contract imposes upon each

party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Crow v. Home Loan Ctr.*, No. 3:11–cv–00259–LRH–VPC, 2011 WL 2214118, at * 2 (D. Nev. 2011).

Here, Plaintiff alleges that she entered into an employment agreement with Diamond in May 2013. (Am. Compl. ¶ 40).  Moreover, Plaintiff alleges that "Diamond had a duty of good faith and fair dealing under the agreement for employment." (*Id.* ¶ 41).  Furthermore, Plaintiff alleges that "Diamond performed the contract for employment in a manner unfaithful to the purpose of the contract by repudiating against Caroline for her reporting of a hostile work environment, and Caroline's justified expectations of a reasonable work environment were denied." (*Id.* ¶ 43).  Although Plaintiff's claim closely resembles her claim of retaliation under Title VII, the Amended Complaint pleads sufficient facts to establish Plaintiff's claim.  Thus, Defendants' Motion to Dismiss on this claim is denied.

### D. Tortious Discharge

Plaintiff's third cause of action alleges that Diamond's termination of Plaintiff's employment constituted tortious discharge. (Am. Compl. ¶¶ 46–49).  A tortious discharge may arise regardless of an employee's at-will status, when no comprehensive statutory remedy exists and the employer terminates an employee for reasons which violate public policy or the discharge is in retaliation for the employee's actions that "are consistent with or supportive of sound public policy and the common good." *D'Angelo v. Gardner*, 819 P.2d 206, 212, 216, 218 (Nev. 1991).  "To prevail, the employee must be able to establish that the dismissal was based

upon the employee's refusing to engage in conduct that was violative of public policy or upon the employee's engaging in conduct which public policy favors (such as, say, performing jury duty or applying for industrial insurance benefits)." *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995). Accordingly, "public policy tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989). Some examples of these cases include: "the discharge of an employee for seeking industrial insurance benefits, for performing jury duty, for refusing to work under unreasonably dangerous conditions, or for refusing to violate the law." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 910 (D. Nev. 1993).

Here, Plaintiff alleges that "Diamond terminated [Plaintiff]'s employment in retaliation for her reporting a hostile work environment and sexual harassment, in a manner contrary to Nevada's public policy." (Am. Compl. ¶ 47). Plaintiff's only alleged public policy violation is the alleged retaliation at issue in this case. While Plaintiff may be entitled to recover under a particular statute, Plaintiff's claim does not meet the standard for a separate tortious discharge action rooted in public policy. The only policy concerns at issue in Plaintiff's case relate to discrimination generally, and they are adequately addressed by the applicable statutory standards. *See Sands Regent v. Valgardson*, 777 P.2d 898, 200 (Nev. 1989) (refusing to recognize a wrongful termination cause of action based on age discrimination where the employee could recover under federal and state discrimination statutes). For these reasons, plaintiff's third cause of action for public policy tort will be dismissed. Accordingly, this claim will be dismissed with leave to amend.

### E. Breach of Contract

Plaintiff's fifth cause of action alleges breach of contract by Diamond. (Am. Compl. ¶¶ 50–53). To state a claim for breach of contract in Nevada, the plaintiff must allege: (1) the existence of a valid agreement between the plaintiff and the defendant; (2) a breach by the

defendant; and (3) damages as a result of the breach. *Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 2000). Plaintiff alleges that she entered into an employment agreement with Diamond in May 2013. (Am. Compl. ¶ 40). Moreover, Plaintiff alleges that she "Caroline was entitled according to her agreement with Diamond to certain bonuses and compensation which has not been provided to [Plaintiff]." (*Id.* ¶ 51). Furthermore, Plaintiff alleges that she has suffered damages as a result of Diamond's breach. (*Id.* ¶ 52). Based on these allegations, Plaintiff has sufficiently pled a breach of contract claim.

Although Defendants contend that "claims for breach of contract are not applicable to at-will employment," Plaintiff does not base her breach of contract claim on her termination. Rather, Plaintiff bases her claim on alleged bonuses and compensation to which she was entitled based on an agreement between the parties. (Mot. to Dismiss 15:13–15). Thus, her status as an at-will employee is not relevant to Plaintiff's claim as alleged. Thus, Defendants' Motion to Dismiss on this claim is denied.

### F. Intentional Infliction of Emotional Distress

Plaintiff's sixth cause of action alleges intentional infliction of emotional distress by Defendants. (Am. Compl. ¶¶ 54–58). To establish a claim of intentional infliction of emotional distress ("IIED"), plaintiff must prove: (1) defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) [plaintiff] suffered severe or extreme emotional distress; and (3) actual or proximate causation." *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993).

In Nevada, "extreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (internal quotation marks omitted). When considering whether a plaintiff has sufficiently stated a claim upon which relief can be granted, "The court determines whether the defendant's conduct may be regarded as extreme and

outrageous so as to permit recovery, but, where reasonable people may differ, the jury [must determine] whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009).

The Amended Complaint alleges two specific incidents of harassment. For example, Plaintiff alleges that "Troy brought to work all of Caroline's personal items she had left at his house and left them open and unattended in the parking lot for her to pick up, even after she had objected to him doing so." (Am. Compl. ¶ 12). Moreover, Plaintiff alleges that "[o]n one occasion at work Troy shouted out that Caroline has 'a big cave,' implying that Caroline was unchaste and would sleep around." (*Id.* ¶ 62). The remainder of the Amended Complaint contains general allegations of harassment. For example, Plaintiff alleges that "Troy continued to make unwanted advances against Caroline and would often make suggestive and crude jokes," and "Troy and Pamela would make rude, suggestive and inappropriate comments creating a hostile work environment." (*Id.* ¶¶ 10, 24).

While it remains a question of fact to be resolved by the jury, the Court finds that a reasonable person could certainly conclude that it was "outside all possible bounds of decency" for Troy to shout derogatory statements of a sexual nature about Plaintiff at their place of employment and to leave Plaintiff's personal items unattended in a parking lot.

However, Plaintiff's IIED claim against Diamond is based on the same alleged illegal employment practices underlying her discrimination claims. This Court and the Supreme Court of Nevada have held that Nevada Revised Statutes § 613 .330 et seq. "provides the exclusive remedy for tort claims premised on illegal employment practices." *Brinkman v. Harrah's Operating Co., Inc.*, 2008 U.S. Dist. LEXIS 123992, at * 5 (D. Nev. Oct. 16, 2008); *see Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) ("the Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *D'Angelo v. Gardner*, 819

P.2d 206, 217 n. 10 (Nev. 1991) ("no *additional* court-created remedies ... arise out of age-based wrongful discharge for which tort recovery is available by statute."). While the Court will not dismiss this claim as to Troy, it will dismiss this claim as to Diamond without prejudice in order to allow Plaintiff to sufficiently plead alternative grounds for this claim that is not precluded by statute.

### G. Defamation and Slander per se

Plaintiff's seventh cause of action alleges defamation and slander per se by Partin. (Am. Compl. ¶¶ 59–68). To succeed on a defamation claim in Nevada, a plaintiff must prove: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (quoting *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005)). Furthermore, to constitute slander *per se,* the alleged defamation must be oral and must fall into one of four categories: (1) that the plaintiff committed a crime; (2) that the plaintiff has contracted a loathsome disease; (3) that a woman is unchaste; or, (4) the allegation must be one which would tend to injure the plaintiff in his or her trade, business, profession or office. *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981).

A statement may only be defamatory if it contains a factual assertion that can be proven false. *See Flowers v. Carville*, 112 F. Supp. 2d 1202, 1210 (D. Nev. 2000). The determination of whether a statement is capable of a defamatory construction is a question of law. *Branda v. Sanford*, 637 P.2d 1223, 1225–26 (Nev. 1981). "In reviewing an allegedly defamatory statement, the words must be viewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning." *Lubin v. Kunin*, 17 P.3d 422, 425–26 (Nev. 2001) (internal quotations omitted). In Nevada, in order to determine if a statement is one of fact or opinion, "the court must ask whether a reasonable person would be likely to understand the

remark as an expression of the source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002); *see also, Wynn v. Smith*, 16 P.3d 424, 431 (Nev. 2001). If a statement is susceptible to different constructions, resolution of any ambiguity is a question of fact for the jury. *Branda*, 637 P.2d at 1225–26.

As a general rule, "only assertions of fact, not opinion, can be defamatory. However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false." *Wynn*, 16 P.3d at 431 (citing *K–Mart Corporation v. Washington*, 866 P.2d 274, 281 (Nev. 1993)). Further, "statements of belief are defamatory if they imply the existence of defamatory facts that are not disclosed to the listener ... for example, the statement I think he must be an alcoholic is actionable because a jury might find that it implied that the speaker knew undisclosed facts justifying his opinion." Restatement (Second) Torts, § 556; *see also Gordon v. Dalrymple*, 2008 WL 2782914, *4 (D. Nev. July 8, 2008) ("Any statement which presupposes defamatory facts unknown to the interpreter is defamatory.").

Here, Plaintiff alleges that Defendant Partin "made false and defamatory statements concerning Caroline to third-parties … about [Plaintiff]'s chastity and her ability to work." (Am. Compl. ¶¶ 60–61). More specifically, Plaintiff alleges that on one occasion, Partin "shouted out that Caroline has 'a big cave,' implying that [Plaintiff] was unchaste and would sleep around." (*Id.* ¶ 62). Furthermore, Plaintiff alleges that Partin "has also lied to people about [Plaintiff]'s sales numbers, stating that they were lower than her numbers really were." (*Id.* ¶ 63). Although Plaintiff alleges statements, which qualify as defamatory per se, Plaintiff does not indicate to whom these false statements were made and when they were made. These are crucial facts needed to satisfy the element of an unprivileged communication to a third person. Without such facts, Defendants are not put on notice as to their conduct so that they can adequately defend against the suit. *See, e.g.*, *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1160

(D. Nev. 2005). Accordingly, this claim will be dismissed with leave to amend.

### H. Intentional Interference with Contractual Relations

Plaintiff's eighth cause of action alleges intentional interference with contractual relations by Partin. (Am. Compl. ¶¶ 69–74). In Nevada, intentional interference with contractual relations requires a plaintiff to establish five elements: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Here, Plaintiff alleges that Partin "knew that [Plaintiff] and Diamond had a valid and existing contract of employment," Partin "intentionally acted to disrupt the contractual relationship of employment," and Plaintiff and "Diamond's contract of employment was disrupted due to [Partin]'s actions." (Am. Compl. ¶¶ 70–72). Accepting Plaintiff's allegations as true and viewing the allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff's allegations sufficiently allege a claim of intentional interference with contractual relations. Thus, Defendants' Motion to Dismiss on this claim is denied.

### I. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiff may be able to plead additional facts to support the following causes of action: (1) sex discrimination under Title VII and Nevada Revised Statutes;

(2) hostile work environment under Title VII and Nevada Revised Statutes; (3) tortious discharge; (4) intentional infliction of emotional distress as to Diamond; and (5) defamation and slander per se.  Accordingly, because the Court finds that Plaintiff may be able to plead additional facts to support these causes of action, the Court will grant Plaintiff leave to file a second amended complaint.

Plaintiff shall file her second amended complaint **by Wednesday, May 13, 2015**, if it can allege sufficient facts that plausibly establish the following claims against Defendants: (1) sex discrimination under Title VII and Nevada Revised Statutes; (2) hostile work environment under Title VII and Nevada Revised Statutes; (3) tortious discharge; (4) intentional infliction of emotional distress as to Diamond; and (5) defamation and slander per se.  Failure to file a second amended complaint by this date shall result in the Court dismissing these claims with prejudice.

### IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 17) is **GRANTED in part** and **DENIED in part**.  The following claims are **DISMISSED without prejudice with leave to amend**: (1) sex discrimination under Title VII and Nevada Revised Statutes; (2) hostile work environment under Title VII and Nevada Revised Statutes; (3) tortious discharge; (4) intentional infliction of emotional distress as to Diamond; and (5) defamation and slander per se.  Moreover, Defendants' Motion to Dismiss is **DENIED** with respect to the following claims: (1) retaliation under Title VII and Nevada Revised Statutes; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of contract; (4) intentional interference with contractual relations; and (5) intentional infliction of emotional distress as to Partin.

**IT IS FURTHER ORDERED** that Plaintiff shall file her second amended complaint **by Wednesday, May 13, 2015**.  Failure to file a second amended complaint by this date shall

result in the Court **DISMISSING these claims with prejudice** and the case will continue only on Plaintiff's following claims: (1) retaliation under Title VII and Nevada Revised Statutes; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of contract; (4) intentional interference with contractual relations; and (5) intentional infliction of emotional distress as to Partin.

**DATED** this 28th day of April, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge